# In re Incorporation of the Borough of Glen Mills

*Pamela W. Higgins,* for petitioner.

*D. Barry Gibbons,* for Thornbury Township.

REED, JR., *J.,* June 15, 1988 — This matter arises on the petition of Glen Mills School to be incorporated as the Borough of Glen Mills out of Thornbury Township in Delaware County, Pennsylvania. Glen Mills School is an educational institution for the rehabilitation of court-committed juveniles. It is governed by a board of managers and currently has about 570 juveniles in residence. Hence, the school is the only freeholder in the proposed borough, and it, by proper action, authorized its officers to sign the petition for the school. Not only a majority but here the sole and therefore all the freeholders signed this petition, which was filed on December 4, 1986.

After disposing of certain preliminary objections this court, on April 14, 1987, entered an order appointing a five-member borough advisory committee.

In conformance to the Borough Code as amended 530.S. 45202, the committee was composed of two members named by the township, two by the school and the chairman by the court.

The committee held three non-consecutive hear-

ings from July 16, 1987 through August 12, 1987. In addition the committee toured the land and buildings of the proposed borough. The committee did a very thorough job and carefully weighed and considered the testimony and evidence. With court approval of certain extensions for the filing of its report, it did so on December 30, 1987.

The committee report, recommending against incorporation, is signed by the chairman and the two township appointees. A dissenting report was filed, signed by the school appointees.

The report finds this court has jurisdiction to decide this petition. We agree.

The report makes 34 separate findings of fact. These findings set out that Thornbury Township is a second class township containing 5,923 acres including the 779 acres in the proposed borough, which takes about 13 percent of the total area.

The proposed borough would leave *three separate islands of township property;* two of which would be surrounded by the borough, and the third on three sides by the borough and the fourth side by Concord Township.

The school owns all of the property in the proposed borough, with 120 full-time personnel who live in residences, provided by the school, and would also be residents of the borough, along with the 570 court-committed juveniles, who range in age from 15 to 18 years.

The school is governed by a board of 21 managers. Presumably these managers would either directly or indirectly govern the borough.

The school operates its own sewage and well water system. It maintains its own informal security force, but relies on local volunteer fire companies and the state police for fire and police protection, respectively.

The school is tax-exempt and hence is not a source of support for the township, except in so far as the residents pay an earned income tax, which of course would go to the proposed borough if it were approved.

The roads in the school are private roads and maintained by the school and hence would become part of the proposed borough.

The township has various residential zones, and industrial and institutional zones. The school is the sole institutional zone and would continue; except that the borough would have the power to create its own zoning although the testimony was to the effect that it would continue as is.

In essence, the school would continue as the proposed borough. The township would not materially or substantially be affected *except geographically*.

The report deals with the points necessary for consideration as set out in *Bear Creek Township v. Penn Lake Park Borough,* 20 Pa. Commw. 77, 340 A.2d 642 (1975). Summarizing these points the proposed borough: (1) could certainly provide adequate and reasonable support service; (2) would have no potential for commercial, residential and industrial development, unless it departs from its exclusive institutional zoning status; and (3) would not that seriously impact upon the financial and tax status of the township, and the proposed borough would continue to operate for now, as it has, as the Glen Mills School.

Considering in addition (a) that the proposed area would be one harmonious whole; (b) that the proposed area carves out three separate islands of Thornbury Township; (c) that the township and proposed borough would continue to receive services; creation of the borough would have little

effect upon either the township or school; and (d) that all the residents of the proposed borough are employees and agents of the school and hence of the borough; *Borough of Two Ponds,* 87 Pa. Commw. 324, 489 A.2d 939 (1985), there would facially appear to be little reason why the petition should not be granted.

The committee however does not recommend creation of the borough.

Having reviewed the record, testimony and the report with its conclusion we not only agree with the report, but are persuaded by the competence, inherent credibility, perception and thoroughness, and we therefore adopt its conclusions, and as well its conclusion on jurisdiction, and findings of fact.

We have recited the controlling facts; which raise the central issue of this case:

Does the owner and therefore sole freeholder of one contiguous area have the right to incorporate that holding as one single and separate municipal governmental unit; that is create a borough out of it?

We think not.

This appears to be a novel case, for we find no precedent for it. The concept here presented strikes at the very root and concept of government, most certainly democratic government as we understand it in America, which always rests upon the union of a group of freeholders into a self-governing unit, wherein divergent groups and people through the vote express their majority and voice.

Here we have one land owner who now says I want to separate and govern myself.

If this were allowed, how far would it go: colleges, universities, sundry institutions, corporations, larger land owners, perhaps smaller too, would break off at will from townships and into multi-separate boroughs. Each borough going its own way to create a mix of

perhaps harmonious, perhaps antagonistic, but incongruous zoning or development patterns, and as well conflicting and often inconsistent services. The potential for exclusion, exploitation and overreaching becomes real and ever present.

Suppose Glen Mills School sold its property and moved, one whole borough would then be bought, and available for unbridled and unrestricted control except as the borough code might provide.

Finally, although Glen Mills may well meet all the criteria for a separate borough, there is at the root absolutely *no reason for it to become a separate borough.* It has now all a separate government could provide: services, protection, tax exemption, and the security of protective government regulation for sewage, zoning, access roads, and so on.

In the end we have not come so far in our evolving history to now go backward toward creating what would ultimately become feudal-like estates. This is certainly not the acceptable or reasonable basis and approach to local government.

We do not approve the creation of the Borough of Glen Mills. The petition must be denied.

## ORDER

And now, June 15, 1988, the petition of Glen Mills School for the incorporation of Glen Mills Borough be, and is hereby denied.